UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JULIA WILLIAMS,

      Plaintiff,

v.                                 Case No: 6:24-cv-1672-JSS-NWH

THE CITY OF DAYTONA BEACH
and THE HOUSING AUTHORITY
OF THE CITY OF DAYTONA
BEACH,

      Defendants.
_____/

## ORDER

Defendant the Housing Authority of the City of Daytona Beach moves to dismiss the amended complaint. (Dkts. 31, 43.) Plaintiff opposes the motion. (Dkt. 38.) Upon consideration, for the reasons outlined below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff, an African American woman, alleges that she worked as a property manager for Defendants, the Housing Authority of the City of Daytona Beach and the City of Daytona Beach. (Dkt. 14 at 5.) According to her, she was never—in her more than twenty years of working for Defendants—suspended or issued a letter of reprimand. (*Id.*) She claims that her department had a vacant property manager position but that the housing authority, without advertising the position, hired a white

woman, Sherley Roman, as a senior property manager—a position that Plaintiff alleges did not exist before it was summarily given to Roman.  (*Id.* at 5–8.)

Plaintiff further alleges that contrary to Defendants' progressive disciplinary policy, Roman abruptly terminated her shortly after Roman became the senior property manager.  (*Id.* at 13–14.)  Plaintiff asserts that she was terminated on April 22, 2022, based on her race and in retaliation for reporting Roman's and Defendants' discrimination based on race.  (*Id.*)  According to Plaintiff, her termination letter stated that her firing "could not be reversed," and she did not learn that she could appeal her termination to the housing authority until someone else informed her.  (*Id.* at 16, 19, 21.)  She claims that she complained to the city's mayor, Derrick Henry, and the housing authority's chief executive officer, Charles Woodyard, but that "neither responded nor caused Defendants to cease their unlawful employment practices against Plaintiff, including their retaliatory termination."  (*Id.* at 15.)

According to Plaintiff's charge letter, she dual-filed a charge of discrimination with the Florida Commission on Human Relations (FCHR) and the Equal Employment Opportunity Commission (EEOC) on April 19, 2023.[1]  (*See* Dkt. 31-1 at

---

[1] While a court resolving a motion to dismiss must generally confine its analysis to the four corners of the complaint, a court may consider a document that is incorporated by reference into the complaint. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  A document is incorporated by reference into a complaint if it is "central to the plaintiff's claims" and "undisputed, meaning that its authenticity is not challenged."  *Id.*  Plaintiff's charge letter is central to her claims because it is necessary to demonstrate that she satisfied the administrative conditions precedent to filing suit by first filing a timely charge of discrimination with the EEOC, and Plaintiff does not dispute the charge letter's authenticity.  (*See* Dkt. 38.)  Accordingly, the court considers the charge letter.  *See Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1228 (N.D. Ga. 2013) ("In discrimination cases, the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it was not attached to a pleading.").

3.)  From the parties' briefing on this motion, it appears that before Plaintiff instituted

this action, her claims were investigated by the FCHR.  (*See* Dkt. 31 at 3–4; Dkt. 38 at

6–7.)  Plaintiff subsequently initiated this lawsuit by filing a complaint against "the

City of Daytona Beach D/B/A or A/K/A the Housing Authority of the City of

Daytona Beach." (Dkt. 1 at 1.)  She later amended her complaint to name the city and

the housing authority as separate Defendants.  (*See* Dkt. 14.)  She brings four claims

related to her employment with Defendants: race-based discrimination and retaliation

under Title VII, 42 U.S.C. §§ 2000e to 2000e-17, and violations of the due process and

equal protection clauses of the Fourteenth Amendment.  (Dkt. 14 at 17–28.)  The

housing authority moves to dismiss the amended complaint. (Dkt. 31.)  Plaintiff filed

a response, (Dkt. 38), and the housing authority, with the court's permission, filed a

reply, (*see* Dkts. 40, 42, 43).

## APPLICABLE STANDARDS

In deciding a motion to dismiss for failure to state a claim, a court "accept[s]

the allegations in the complaint as true and construe[s] them in the light most favorable

to the plaintiff." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019).  To survive a

motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief

above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The

complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 570).  A claim is facially plausible if the plaintiff pleads facts that

allow the court to "draw the reasonable inference that the defendant is liable" for the

alleged misconduct. *Id.* While "detailed factual allegations" are not generally required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

The adversarial system requires that parties present arguments to the court. *See Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("[C]ourts cannot concoct or resurrect arguments neither made nor advanced by the parties."). Accordingly, a party "abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

## ANALYSIS

The court first considers the housing authority's argument that Plaintiff's Title VII claims are time-barred, (Dkt. 31 at 6–9), before considering the housing authority's arguments as to Plaintiff's constitutional claims, (*id.* at 10–21).

### A.  Title VII

"The timely filing of an EEOC charge is a prerequisite to a Title VII suit." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 449 (11th Cir. 1993); *see City of Hialeah v. Rojas*, 311 F.3d 1096, 1102 (11th Cir. 2002) ("If the victim of an employer's unlawful employment practice does not file a timely [charge], the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful."). "For a charge to be timely in . . . Florida, it must be filed within [three hundred] days of the . . . discriminatory act." *EEOC v. Joe's Stone*

*Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). The latest discriminatory act Plaintiff complains of is her unlawful termination, which occurred on April 22, 2022. (Dkt. 14 at 13; *see also* Dkt. 31-1 at 3.) Plaintiff waited until April 19, 2023, to dual-file her charge of discrimination with the FCHR and EEOC—more than three hundred days after her termination. (*See* Dkt. 31-1 at 3.) Because Plaintiff did not timely file a charge with the EEOC, her Title VII claims are not actionable. *See Joe's Stone Crabs*, 296 F.3d at 1271.

Plaintiff makes several arguments in an effort to resist this conclusion, (*see* Dkt. 38 at 4–8), each of which is unavailing. Plaintiff contends that she "timely filed a dual[-]charge of continuing discrimination with both the [FCHR and EEOC] by filing her designated dual-charge with [the] FCHR." (*Id.* at 4–5.) While it is true that Plaintiff dual-filed her charge, (*see* Dkt. 31-1 at 3), that has no bearing on whether her Title VII claims are timely. Title VII and FCRA claims are subject to different time bars. *See* 42 U.S.C. § 2000e-5(e)(1); Fla. Stat. § 760.11(1). Dual-filing claims with the FCHR and EEOC that are time-barred by Title VII but not by the FCRA does not render the Title VII claims timely. *See Bourne v. Sch. Bd. of Broward Cnty.*, No. 10-60942-Civ-SCOLA, 2012 WL 12894235, at *4 (S.D. Fla. Feb. 13, 2012) ("[The plaintiff]'s termination became effective on May 8, 2007, 328 days before the filing of her charge of discrimination with the EEOC. While this date makes her claim of retaliatory termination timely under the FCRA, it is plainly untimely under Title VII."); *cf. Segura v. Hunter Douglas Fabrication Co.*, 184 F. Supp. 2d 1227, 1228–30 (M.D. Fla. 2002)

(describing the work sharing agreement between the EEOC and FCHR and noting that the general purpose of that agreement is to divide the labor required to investigate submitted claims between those agencies).

Plaintiff also submits that although she was terminated on April 22, 2022, Defendants "continued their unlawful employment practices by upholding their wrongful termination when they failed to respond to or hear her written internal appeal by July 3, 2023." (Dkt. 38 at 6.) Though Plaintiff cites no caselaw to support this argument, she appears to assert that the continuing violation doctrine applies and renders her claims timely. (*See id.* (noting that Plaintiff's FCHR charge letter alleged "*continuing* discrimination").) This argument fails as a matter of law. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 114 (2002) (holding that a "discrete retaliatory or discriminatory act," including termination, "'occur[s]' on the day that it 'happen[s]'" such that a party "must file a charge within . . . [three hundred] days of the date of the act or lose the ability to recover for it").

Plaintiff further asserts that the housing authority is "time-barred from raising untimeliness" because it "failed to ever raise a claim or defense of untimeliness to [the] EEOC—or anyone—during the entire preceding administrative charge." (Dkt. 38 at 5.) This assertion apparently refers to a prior proceeding Plaintiff initiated against the housing authority before the FCHR. (*See* Dkt. 31 at 3–4; Dkt. 38 at 6–7.) However, because that administrative proceeding was before the FCHR, it presumably involved Plaintiff's FCRA claims. Because those claims were timely, the housing authority would have had no reason to raise a timeliness challenge in that proceeding. Even if

it did, Plaintiff offers no authority to support her argument that the housing authority is now barred from asserting a timeliness defense to Plaintiff's Title VII claims. (*See* Dkt. 38.)  Though she cites two cases in this section of her response, neither supports her argument.  (*Id.* at 6 (citing *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (noting that Title VII actions must be reasonably related to the allegations made in the EEOC charge letter), and quoting *Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 892 (11th Cir. 2014) (same)).)  Because Plaintiff fails to develop this argument with "supporting arguments and authority," she has abandoned it.  *See Sapuppo*, 739 F.3d at 681.

Plaintiff next contends that she is entitled to equitable tolling, arguing that it "is appropriate where the plaintiff has actively pursued her rights but has been prevented from timely filing due to extraordinary circumstances" and that her "actions meet this standard."  (*Id.* at 7.)  The court notes that equitable tolling is not a remedy that is granted lightly, *see Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) ("The Supreme Court has made clear that tolling is an extraordinary remedy which should be extended only sparingly." (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)), and that Plaintiff bears the burden of establishing her entitlement to tolling, *see Robinson v. Schafer*, 305 F. App'x 629, 630 (11th Cir. 2008).  Plaintiff states that the instant action was "impeded by delays caused by the administrative process, including misinformation and procedural confusion exacerbated by Defendant's misrepresentations," (Dkt. 38 at 7), but she provides no support for this claim nor detail sufficient for the court to conduct an equitable tolling analysis, (*see id. passim*).

While equitable tolling may be available where a "defendant misleads [a plaintiff] into allowing the statutory period to lapse," *Justice*, 6 F.3d at 1479, Plaintiff does not allege facts in the amended complaint to support such an argument, (*see* Dkt. 14). Instead, her allegations demonstrate that she had all the information necessary to assert her discrimination claims when they happened. *See Justice*, 6 F.3d at 1479 ("The interests of justice side with the defendant when the plaintiff does not file her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running . . . ."). Accordingly, Plaintiff's equitable tolling argument fails.[2] *See Henderson v. Reid*, 371 F. App'x 51, 54 (11th Cir. 2010) (disregarding the plaintiff's equitable tolling argument and affirming the dismissal of his complaint where he "failed to plausibly allege any facts showing that he [wa]s entitled to equitable tolling"); *Nicholson v. Smoots*, No. 2:18-CV-681-WKW, 2021 WL 6125791, at *1 (M.D. Ala. Dec. 28, 2021) ("There are no facts that [the d]efendants fraudulently concealed any information or otherwise prevented [the p]laintiff from learning the facts he needed to bring his claims. On the allegations, equitable tolling cannot save [the p]laintiff's claims." (citations omitted)).

---

[2] In one of her Title VII counts, Plaintiff alleges that she "reasonably relied" "[t]o her . . . detriment" on her termination letter's misstatement that her termination was final. (Dkt. 14 at 21.) Plaintiff does not make an equitable tolling argument on this basis. (*See* Dkt. 38.) Even if she did, this allegation would not support an equitable tolling argument, as the alleged misstatement concealed Plaintiff's right to appeal her termination, not to initiate a Title VII claim. *See Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1303 (5th Cir. 1979) (noting that equitable tolling may be proper where "a defendant . . . conceal[s] facts that support the plaintiff's cause of action" and thus precludes a "duly diligent plaintiff [from] . . . discover[ing] those facts").

"By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980). "[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Id.* at 826. Because Plaintiff failed to timely exhaust her administrative remedies, her Title VII claims are time-barred, and those claims are thus dismissed with prejudice.

## B. Constitutional Claims

Defendant raises several arguments regarding Plaintiff's constitutional claims. (*See* Dkt. 31 at 10–21.) The court first considers whether counts three and four are improperly duplicative of her Title VII claims, then whether they are barred by res judicata,[3] and finally whether the amended complaint states a claim under counts three and four in turn. Briefly, however, the housing authority is correct to note that Plaintiff improperly raises counts three and four under the Constitution directly rather than pursuant to 42 U.S.C. § 1983. (Dkt. 31 at 10.) *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) ("42 U.S.C. § 1983 provides a remedy for deprivations secured by the Constitution . . . ."). Plaintiff admits this defect and requests permission to amend. (Dkt. 38 at 8–9.) If Plaintiff amends her constitutional claims, she must allege them pursuant to section 1983.

---

[3] The court follows the Eleventh Circuit in using the term "res judicata" to "describe the preclusive effect which should be given to [a] prior adjudication." *Concordia v. Bendekovic*, 693 F.3d 1073, 1075 n.2 (11th Cir. 1982).

### 1.  Section 1983 and Plaintiff's Title VII Claims

The housing authority argues that counts three and four should be dismissed because they allege nothing more than violations of Plaintiff's rights under Title VII. (Dkt. 31 at 10–11.)  It is true that a plaintiff may not raise section 1983 claims premised only on "violations of rights created by Title VII."  *Johnson v. Ballard*, 644 F. Supp. 333, 337 (N.D. Ga. 1986) (emphasis omitted); *see Johnson v. Knupp*, No. 5:99-CV-50-OC-10C, 2000 WL 1238976, at *3 (M.D. Fla. Mar. 28, 2000) ("In the instant case, the [p]laintiff has not alleged any deprivation other than a violation of her rights guaranteed by Title VII. . . .  [T]he [c]ourt therefore finds that . . . the claim pursuant to [section 1983] is preempted by Title VII." (citation omitted)).  Though counts three and four reference violations of Plaintiff's rights under Title VII, they also clearly assert constitutional violations.  (*See* Dkt. 14 at 24, 27.)   This argument is therefore unavailing—though Plaintiff's Title VII and constitutional claims overlap, the latter claims assert more than violations of Title VII.  *See Whiting v. Jackson State Univ.*, 616 F.2d 116, 121 (5th Cir. 1980) (contemplating that section 1983 may be "used as a parallel remedy" alongside Title VII); *Johnson*, 644 F. Supp. at 337 ("In the instant action, [the] plaintiffs allege several violations of their constitutional rights.  Although these rights may overlap with [the] plaintiffs' Title VII rights, they are not newly created by Title VII."); *cf. Palmer v. Dist. Bd. of Trs. of St. Petersburg Junior Coll.*, 748 F.2d 595, 596 & n.2 (11th Cir. 1984) (discerning no issue where the plaintiff raised Title VII and section 1983 claims and noting that section "1983 claims require the same elements of proof as a Title VII action").

- 10 -

### 2. Res Judicata

Next, the housing authority submits that counts three and four are barred by res judicata. (Dkt. 31 at 12–13.) As noted above, it appears that before Plaintiff instituted this action, her claims were investigated by the FCHR. (*See id.* at 3–4; Dkt. 38 at 6–7.) The housing authority asserts that the FCHR ultimately found no reasonable cause to support Plaintiff's claims and that a state Administrative Law Judge (ALJ) then conducted a two-day evidentiary hearing and ultimately found in favor of the housing authority. (Dkt. 31 at 3–4, 12–13.) The housing authority's position is that the court must give the ALJ's findings of fact preclusive effect and dismiss counts three and four with prejudice. (*See id.* at 12–13.) *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) ("[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact[]finding the same preclusive effect to which it would be entitled in the [s]tate's courts." (alteration adopted and quotation omitted)); *Thornquest v. King*, 82 F.3d 1001, 1004 (11th Cir. 1996).

In Florida, res judicata "prevents identical parties from relitigating the same issues that have already been decided." *Dep't of Health & Rehab. Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. Dist. Ct. App. 1995). "The essential elements of the doctrine are that the parties and issues be identical, and that the particular matter be fully litigated and determined in a contest which results in a final decision out of a court of competent jurisdiction." *Id.* It has been determined in another case in this district that where an ALJ held evidentiary hearings during which the plaintiff was permitted to adduce

testimony and cross-examine the witnesses brought against her and the hearings resulted in findings of fact adopted by the FCHR, the plaintiff was "estopped from challenging the FCHR's findings of fact underlying [the] [s]ection 1981 claims" she raised before the federal court. *McCrimmon v. Daimler Chrysler Corp.*, No. 6:05-cv-10-Orl-19DAB, 2005 WL 8159946, at \*4–5 (M.D. Fla. Nov. 9, 2005). However, this determination arose during the summary judgment stage. *See id.* at \*3.

"[B]efore an action may be summarily dismissed on the ground of res judicata[,] the ends of justice require as a minimum that the defense of res judicata appear from the face of the complaint or that the record of the prior case be received in evidence." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982) (quotation omitted). That is, a motion to dismiss a complaint on the basis of res judicata may be granted only where "the record affords sufficient information." *Id.* Though the housing authority appears to have attached the entire administrative record to its motion to dismiss, (*see* Dkts. 31-1 to 31-5), it does not request that the court take judicial notice of the record, (*see* Dkt. 31), and the court need not do so sua sponte, *see* Fed. R. Evid. 201(c) (stating that a court "may take judicial notice on its own" but "must take judicial notice if a party requests it and the court is supplied with the necessary information"); *Diulus v. Am. Express Travel Related Servs. Co.*, 823 F. App'x 843, 847 (11th Cir. 2020) ("[The plaintiffs] did not request that the district court take judicial notice of the online news articles, and a court cannot abuse discretion it was not asked to exercise."). Even if the housing authority had made such a request, it does not appear proper to take judicial notice of the entire administrative record. *See Shahar v. Bowers*, 120 F.3d 211,

214 (11th Cir. 1997) (en banc) ("[T]he taking of judicial notice of facts is . . . a highly limited process."); *Concordia*, 693 F.2d at 1076 ("As a general rule, a court in one case will not take judicial notice of its own records in another and distinct case even between the same parties, unless the prior proceedings are introduced into evidence." (quotation omitted)). Accordingly, the court will not resolve the issue of res judicata at this stage of the litigation, though the housing authority may raise this defense again at the summary judgment stage. *See Concordia*, 693 F.2d at 1075 ("Res judicata . . . is not a defense under [Rule] 12(b); it is an affirmative defense that should be raised under Rule 8(c).").

### 3. Failure to State a Claim

The court addresses the housing authority's arguments that Plaintiff has failed to state a claim as to count three, (*see* Dkt. 31 at 14–19), and count four, (*see id.* at 19–21), in turn.

#### a) Due Process

The housing authority contends that Plaintiff cannot state a procedural due process violation[4] because an adequate state remedy exists under Florida law such that count three should be dismissed with prejudice. (Dkt. 31 at 18–19.) "It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an

---

[4] Plaintiff cursorily argues that she also alleges a deprivation of her substantive due process rights, (*see* Dkt. 38 at 13), but it is well-settled that state-created employment rights implicate only procedural due process, *see Apothecary Dev. Corp. v. City of Marco Island*, 995 F. Supp. 2d 1341, 1348 (M.D. Fla. 2014) ("[E]mployment rights are only protected under the procedural, rather than substantive, component of the Due Process Clause." (citing *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc))).

impartial decisionmaker before infringing on a person's interest in life, liberty, or property." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (en banc). However, individuals previously employed by a state cannot seek relief in federal court if they had an adequate state remedy available to them. *See id.* at 1563 ("[E]ven if [the plaintiff] suffered a procedural *deprivation* . . . , he has not suffered a *violation* of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation."); *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) ("This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora—agencies, review boards, and state courts[—] before being subjected to a claim alleging a procedural due process violation." (quotation omitted)). Florida provides such an adequate remedy through its courts, which "have the power to review employment termination cases" and ensure procedural fairness. *McKinney*, 20 F.3d at 1563. As such, Plaintiff's "state remedy was capable of providing [her] with all the relief warranted," and "the presence of [such] a satisfactory state remedy mandates that [the court] find that no procedural due process violation occurred." *Id.* at 1564.

Plaintiff effectively fails to respond to this argument, asserting without support that the housing authority's "entire argument [in] this regard is disingenuous at best[] and totally counterintuitive." (*See* Dkt. 38 at 19.) Plaintiff's sole citation in this section of her response is to the res judicata case *Elliott*. (*See id.*) She cites *Elliott* for the

proposition that "plaintiffs may proceed in federal court on employment discrimination cases so long as they did not appeal the adverse administrative findings in state court," (*id.* (citing *Elliott*, 478 U.S. 788)), but that proposition has nothing to do with the housing authority's adequate state remedy argument. A broader examination of *Elliott* does not help Plaintiff because the Court's holding in that case was entirely unrelated to the state remedy issue. *See* 478 U.S. at 799 (explaining that, in certain circumstances, federal courts must give preclusive effect to the factfinding of state agencies). *Elliott* does not even mention due process. *See id. passim*. Especially in the absence of argument to the contrary, the court agrees with the housing authority that Plaintiff had an adequate state remedy in the Florida courts. *See Sapuppo*, 739 F.3d at 681. Accordingly, Plaintiff's procedural due process claim must be dismissed with prejudice. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (stating that a complaint may be dismissed with prejudice on the basis of futility where "the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant").

### b) Equal Protection

The housing authority maintains that count four, which alleges Defendants violated the Equal Protection Clause, must be dismissed because Plaintiff failed to allege a proper comparator. (Dkt. 31 at 19–21.) "The Equal Protection Clause requires the government to treat similarly situated persons in a similar manner." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009).

Accordingly, an essential element of an Equal Protection Clause claim is that the plaintiff was "similarly situated with other persons who were treated differently." *Glenn v. Brumby*, 632 F. Supp. 2d 1308, 1314 (N.D. Ga. 2009); *see S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1203 (11th Cir. 2019) ("[The] threshold inquiry in an Equal Protection case is whether the plaintiff and the proposed comparator are similarly situated . . . . If the plaintiff has not been treated differently than a similarly situated comparator, no Equal Protection violation exists." (quotation and citation omitted)). The law requires Plaintiff to "demonstrate that she and her proffered comparator[] were 'similarly situated in all material respects.'" *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc).[5] Satisfaction of this requirement will generally entail allegations that the comparator and the plaintiff "engaged in the same basic conduct (or misconduct)," were "subject to the same employment policy, guideline, or rule," answered to the same supervisor, and had similar "employment or disciplinary histor[ies]." *Id.* at 1227–28. The critical issue is whether, objectively, the plaintiff and her proffered comparator "cannot reasonably be distinguished." *Id.* at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)).

In count four of the amended complaint, Plaintiff alleges Roman as a comparator, claiming that Plaintiff and Roman were similarly situated. (*See* Dkt. 14

---

[5] Though *Lewis* was decided in the context of a discrimination claim under Title VII, *see id.* at 1220, its analysis of the comparator requirement applies with equal force to discrimination claims brought under the Equal Protection Clause. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) ("[T]he analysis of disparate treatment claims under [section] 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same."); *Pearson v. Georgia ex rel. Davis*, 806 F. App'x 940, 948 (11th Cir. 2020) (applying *Lewis* to a section 1983 Equal Protection Clause claim).

at 27 ("Defendants applied the laws . . . differently toward [Roman] to her employment benefit based on her race, as opposed to Plaintiff to her employment detriment based on her race, wherein . . . both [Roman] and Plaintiff were similarly-situated [property manager] employees of Defendants in the same department at the same time.").) Whether a plaintiff and a purported comparator are similarly situated is a legal conclusion. *See Douglas Energy Relief Ass'n v. City of Douglas*, 556 F. App'x 820, 825 (11th Cir. 2014) (disregarding as a legal conclusion an expert's opinion that the defendant gave "preferential treatment to Caucasians and discriminate[d] against African Americans who [we]re similarly situated"); *Aurel v. Sch. Bd. of Miami-Dade Cnty. Pub. Schs.*, 261 F. Supp. 2d 1375, 1378 (S.D. Fla. 2003) (referring to the statement that alleged comparators were similarly situated with the plaintiff as a legal conclusion); *Ho v. City of Boynton Beach*, No. 21-81023-CV-MIDDLEBROOKS/Matthewman, 2022 U.S. Dist. LEXIS 53240, at *9 (S.D. Fla. Mar. 23, 2022) ("'Similarly situated' is a legal conclusion, not a factual allegation, and this legal conclusion is unsupported by facts."). Accordingly, the court must determine whether Plaintiff has alleged sufficient factual matter to support her claim that Roman satisfies the comparator requirement. *See Stanley v. City of Sanford*, No. 6:20-cv-629-WWB-GJK, 2021 WL 6333059, at *4 (M.D. Fla. Mar. 1, 2021) ("[T]o allege a claim under the Equal Protection Clause[,] the complainant must include factual detail regarding the 'similarly situated' requirement."); *Washington v. Russel Cnty. Bd. of Educ.*, No. 3:15cv942-WKW-WC, 2017 WL 8131474, at *9 (M.D. Ala. Sept. 1, 2017) ("[B]ecause alleging that a particular person is 'similarly situated' is a legal conclusion,

[the p]laintiff must allege sufficient plausible factual details permitting the reasonable inference that the purported comparator is indeed similarly situated."), *report and recommendation adopted by* 2018 WL 1161392, at *2 (M.D. Ala. Mar. 5, 2018).

Plaintiff alleges that Roman was Plaintiff's supervisor—a senior property manager, (*see* Dkt. 14 at 5)—which undercuts Plaintiff's argument that Roman is a suitable comparator.[6] *See Gloetzner v. Lynch*, 225 F. Supp. 3d 1329, 1354 (N.D. Fla. 2016) ("Courts do make a distinction in assessing comparators between supervisors in positions with greater responsibilities and lower level employees, finding the two positions are not similarly-situated."); *Santillana v. Fla. State Ct. Sys.*, No. 6:09-cv-2095-Orl-19KRS, 2010 WL 271433, at *12 (M.D. Fla. Jan. 15, 2010) ("[The comparator] is not similarly situated to [the plaintiff] because [the plaintiff] was [the comparator]'s supervisor.").    In her response, Plaintiff contends that her amended complaint "identified white employees who were treated more favorably despite holding comparable or lesser qualifications," (Dkt. 38 at 19), though this contention misses the mark as she was required to identify *similarly situated* employees who were treated differently, *see Glenn*, 632 F. Supp. 2d at 1314.    The allegations included in the amended complaint indicate that Roman is not a suitable comparator as to Plaintiff

---

[6] The court notes that Plaintiff is inconsistent in this regard, as she at times alleges Roman was a property manager, (*see, e.g.*, Dkt. 14 at 27), while claiming at others that she was a senior property manager and Plaintiff's "direct supervisor," (*see id.* at 5).  Because the allegations that Roman was a senior property manager are significantly more detailed, (*see id.* at 5–11), the court accepts them as true over Plaintiff's more general allegations that Roman was a property manager.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("[The court's] duty to accept the facts in the complaint as true does not require [it] to ignore specific factual details of the pleading in favor of general or conclusory allegations.").

because Plaintiff had worked for Defendants for more than two decades longer than Roman and because Roman was Plaintiff's supervisor. *See Lewis*, 918 F.3d at 1227–28 (noting that a comparator "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff" and "will share the plaintiff's employment or disciplinary history"). Accordingly, count four is due to be dismissed without prejudice to permit Plaintiff an opportunity to name a suitable comparator, if she can do so in good faith.

## CONCLUSION

Accordingly:

1.  The housing authority's motion (Dkt. 31) is **GRANTED in part** and **DENIED in part**.

2.  Counts one, two, and three of the amended complaint (Dkt. 14) are **DISMISSED with prejudice**. Count four is **DISMISSED without prejudice**.

3.  The housing authority's motion is otherwise **DENIED**.

4.  Plaintiff may file a second amended complaint on or before September 2, 2025.

**ORDERED** in Orlando, Florida, on August 5, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

- 19 -